IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


S.A.W.,[1]

     Plaintiff,

v.                                       Case No. 20-1118-JTM

ANDREW M. SAUL,
Acting Commissioner of Social Security

     Defendant.


**MEMORANDUM AND ORDER**


     Plaintiff S.A.W. applied for supplemental social security (SSI) under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3), on September 1, 2012.[2] The Commissioner of Social Security denied her application on upon initial review on December 14, 2017, and upon reconsideration on March 2, 2018. Plaintiff sought review by an Administrative Law Judge (ALJ). Following a hearing on October 24, 2018 (Tr. 29-50), ALJ Susan Toth determined on February 4, 2019 that plaintiff was not disabled within the meaning of the Act. (Tr. 10-17). The decision of the Commissioner became final when the Appeals Council declined plaintiff's request for review on March 4, 2020. (Tr. 1-3).

---

[1] Plaintiff's initials are used to protect privacy interests.

[2] Plaintiff had applied for and been denied disability benefits, in 2006 and 2008. (Tr. 51-52).

Plaintiff then filed this appeal, arguing that the ALJ erred in finding her allegations not credible and failing to resolve alleged inconsistencies between that testimony and the Residual Functional Capacity (RFC) adopted by the ALJ. In particular, she argues that the ALJ failed to directly engage with her complaints about the need for leg elevation, and thus violated S.S.R. 16-3p. (Dkt. 13, 15). For the reasons provided herein, the court finds that the Commissioner's decision was supported by substantial evidence contained in the record, and the decision of the Commissioner is affirmed.

Plaintiff-claimant plaintiff was born on August 18, 1984, and has stated that she became disabled beginning September 1, 2012, when she was 28 years old, due to deep vein thromboses (DVT), or blood clots, in her left leg. Plaintiff subsequently modified the onset date to October 10, 2017. (Tr. 52). Plaintiff has a high school level education, and her previous work as a packager and fast food worker was unskilled.  The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 12-16), and the briefs of plaintiff (Dkt. 13, at 1-8) and the Commissioner. (Dkt. 14, at 2-7).

Under the Act, the court takes as conclusive the factual findings of the Commissioner so long as these are "supported by substantial evidence." 42 U.S.C. § 405(g).  The court thus looks to whether those factual findings have such support, and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence" means "more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to

support the conclusion." *Barkley v. Astrue*, 2010 WL 3001753, *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). In making this determination, the court must "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

A claimant is disabled if he or she suffers from "a physical or mental impairment" which stops the claimant "from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 WL 3001753, *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 WL 3001753, at *2.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the

onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545. In assessing a claimant's functional capacity, an ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Brownrigg v. Berryhill*, 688 Fed. Appx. 542, 546 (10th Cir. 2017) (citing SSR 16-3p, 2016 WL 1119029, at *9).

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 WL 3001753, *2 (citing *Williams*, 844 F.2d at 751).  The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084.  The burden then shifts to the Commissioner at

step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

The court has reviewed the ALJ decision and the record and concludes that the ALJ opinion was not conclusory or contrary to S.S.R. 16-3p. The ALJ found that plaintiff's DVT was generally controlled through the use of aspirin, compression stockings, and exercise. The ALJ noted plaintiff stated that her symptoms were generally stable, except when she is pregnant.

> Despite her medical condition, the claimant's activities have been basically normal, as she takes care of her young child during the day with no assistance. The claimant spends time during the day performing household chores such as cooking and cleaning. She drives a motor vehicle throughout the community to take care of business and to shop. The claimant testified that she shops for up to two hours at a time, which is inconsistent with her report of not being able to stand for more than one hour at a time. Even, so the residual functional capacity herein considers the claimant's pain and discomfort in her lower extremities.

(Tr. 15).  The ALJ then determined that plaintiff had the RFC to do light work as defined by 20 CFR § 416.967(b), except that (1) she needs to alternate standing and sitting every half hour, and (2) every two hours she needs to elevate her legs ten inches for fifteen minutes at a time. In light of this RFC, plaintiff cannot return to her prior work of packager or fast food worker, but she can perform other work as a mail clerk, office helper, and storage facility rental clerk.

In reaching her conclusion that plaintiff's condition had more than a minimal impact on her functioning, the ALJ discounted the opinions of two reviewing physicians. Based upon his review of the record, Dr. Michael Finan found that plaintiff's

DVT did not significantly limit her physical or mental ability to do basis work. (Tr. 68-69). Dr. Janna Crosnoe reached the same conclusion. (Tr. 56).

The court finds no error in the ALJ's determination as to the claimant's ability to work, with accommodation for periodic leg elevation. In reaching this decision that provided for some periodic leg elevation, the ALJ went beyond the objective medical evidence, as no medical source has recommended this particular limitation, and the consulting state agency physicians did not recommend any restriction.

The ALJ had a substantial basis for discounting plaintiff's own subjective statements of total disability based on the alleged frequency and duration of elevation needed. Those statements were not consistent over time.[3]  Moreover, her condition appeared to be managed with conservative treatment, including over-the-counter medication, compression socks, and exercise.

 After she reported groin pain and numbness in the thighs when pregnant with her last child in 2016, plaintiff was diagnosed with chronic DVT.[4] Ultrasound indicated a partial block in the vein, and plaintiff gave birth without complication. She was prescribed daily doses of the blood thinner Coumadin, but acknowledged in October, 2016 that she took the drug only when she needed it, usually four times a week.

When plaintiff saw hematologist Dr. Nassim Nabbout in March, 2017, she had not been taking the Coumadin for four months. An ultrasound of her left leg was

---

[3] Plaintiff stated in November, 2017 that she needed an hour of elevation three to five times per day. In February, 2018 she reported she needed a half hour of elevation two to three times per day.

[4] The medical records indicate that, before the 2017 onset date, the DVT events in 2004, 2005, 2006, 2008, and 2009, usually occurred when the plaintiff was pregnant, or shortly afterwards.

negative, and plaintiff complained only of swelling in her leg, without any associated tenderness. Dr. Nabbout recommended that anticoagulant drugs be discontinued, unless plaintiff again became pregnant. Three months later, plaintiff again told a provider that she was only taking the Coumadin when she felt she needed it. The provider stated that she needed to take the drug as prescribed.

In September 2017, plaintiff contends she became disabled. She saw Dr. Nabbout on October 10, 2017, stating she had been having pain in her left lower extremity for the past several months. An examination revealed some swelling in the left leg. Plaintiff told Dr. Nabbout she had restarted Coumadin against his advice. Dr. Nabbout noted that plaintiff had no history of spontaneous thrombosis, that is, a blood clot which was not related to a pregnancy or surgery. He therefore told her she was not a good candidate for lifetime anticoagulation medication, and ordered an ultrasound. If it failed to show any evidence of blood clotting events, he would discontinue Coumadin. The subsequent ultrasound was negative.

The following month, plaintiff visited her primary care provider twice. She complained of chronic pain and swelling of her leg. An examination indicated some swelling and varicose veins. Plaintiff reported that she was continuing to take Coumadin (against Dr. Nabbout's advice), and indicated that she only sometimes used compression socks and "occasionally" elevated her leg. Plaintiff asked for a reference to another hematologist and another ultrasound. The ultrasound was negative. The provider said she agreed with Dr. Nabbout and prescribed baby aspirin.

In December 2017, Plaintiff visited vascular surgeon, Dr. Chad P. Ammar. She reported that her physical therapist noted her left thigh was bigger than her right on measurement. She stated she wore compression stockings only infrequently. A physical examination was normal, and Dr. Ammar diagnosed chronic venous thrombosis of the deep vein of the lower extremity and post-thrombotic  syndrome. He recommended plaintiff wear knee high compression stockings, elevate her legs as much as possible, and wrote that it might warrant a CT venogram examination to determine whether further intervention would be necessary.

In April 2018,[5] plaintiff reported to an emergency room complaining of moderate pain and swelling in her left lower leg for the past month. An examination showed that plaintiff's left leg was slightly larger than her right, was tender, and had some superficial varicose veining, but also that she had normal range of motion, sensation, and motor function. An ultrasound found probable chronic thrombus or scarring in the mid to distal superficial femoral vein and the popliteal vein, but no evidence of occlusive thrombosis. The attending provider spoke with Dr. Nabbout, who recommended that Plaintiff not be put back on Coumadin, but that she should start walking and running.

The ALJ reviewed and noted this medical history. (Tr. 14-15). Her determination that plaintiff's medical condition is largely controlled with medication such as baby

---

[5] In the interim and following her disability application, the claimant's records were reviewed by consulting physicians in late 2017 and early 2018. As noted earlier, in December 2017, Dr. Janna Crosnoe, reviewed the record and found that Plaintiff's impairments non-severe. In March 2018, Dr. Michael Finan, reviewed the records and agreed.

aspirin, compression socks, and exercise is supported by substantial evidence. The ALJ accurately assessed the medical history and opinions issued in the case, noted the effectiveness of treatment, and summarized the claimant's activities and statements.

And, as the ALJ noted, plaintiff engaged in substantial activities of daily living. At the hearing before the ALJ, plaintiff was 34 years old, on no medication, and had not seen any treatment providers since April, 2018. She lives with her husband and their six children. The children range in age from two to fourteen years; one of the children (nine years old) is disabled. Plaintiff takes care of her own personal needs, helps her disabled son prepare for school, cares for the two year old during the day, does all the laundry, handles family finances, drives, and does other chores and grocery shopping with help from the other children.

The ALJ's decision was supported by substantial evidence, and her opinion presented several reasons, tied to evidence in the record, for discounting plaintiff's testimony. 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *9. Here, the ALJ observed that the limitations claimed by plaintiff were not supported in the record, that plaintiff managed her condition with "conservative medical care," but that plaintiff frequently did not take her medication as prescribed, or consistently exercise or use compression socks, and that "[d]espite her medical condition, Claimant's activities have been basically normal." (Tr. 15).

Plaintiff now contends that her actual daily living activities were not this robust, and would not preclude her from having to elevate her legs more frequently. Nevertheless, the court finds that the ALJ's decision to discount plaintiff's subjective

statements is reasonable, legally sound, and supported by substantial evidence. In her February, 2018 statement, plaintiff reported that in a typical day, she would "take care of 6 children, laundry, cleaning, driving, shopping, [and] cooking" (Tr. 218-27). She did not then mention any need for assistance. Plaintiff has also stated that each day she got five children off to school each morning, then cared for a two-year old and spent "almost all day" doing laundry and cleaning, and that she would later "prepare any kind of food" for the family, all without any mention of assistance.

The ALJ rendered an assessment of plaintiff's functional capacity which is reasonable and supported by substantial evidence. That assessment as to the frequency and duration of leg elevation is supported by substantial evidence. As noted, the ALJ legitimately discounted plaintiff's testimony as to being totally disabled by the need for leg elevation. Moreover, plaintiff's own statements (in November 2017, February 2018, and October 2018) substantially varied as to frequency and duration of elevation. Further, the assessment reflects a valid review of the medical evidence. Treatment providers did recommend elevation, but gave no specific requirements as to frequency or duration. The consulting physicians found that plaintiff was not subject to any functional limitation.

Plaintiff states that she needs to elevate her leg two to five times a day. But the RFC as adopted by the ALJ allows for a substantial amount of elevation, every two hours or up to four times during work day. The plaintiff could also, of course, elevate her leg when she was away from work, more than meeting even the plaintiff's statement as to the frequency of elevation.

As to the duration and height of elevation, plaintiff only once stated that the elevation had to be of hip height — in two prior statements (November 2017, and February 2018) she made no mention of having to elevate her leg to such a degree. Moreover, the vocational expert testified that plaintiff could elevate her leg to hip-height during scheduled 15 minute breaks or during a longer lunch break (Tr. 49). The vocational expert also testified that that the length of time was not an issue with available jobs so long as the elevation was at the 10-inch "foot stool level."

The ALJ's RFC was an appropriate middle ground that was supported by credible statements and the available medical evidence. The court has considered the arguments made by the plaintiff (Dkt. 13, 15), and concludes these do not demonstrate any error on the part of the Commissioner.

IT IS SO ORDERED this day of April, 2021, that the present appeal is denied and the decision of the Commissioner is AFFIRMED.


*J. Thomas Marten*
J. Thomas Marten, Judge